UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CORNELIUS A. BADGER, JR., | |
| Plaintiff, | **ORDER TO AMEND** |
| -*against*- | 22-cv-9784 (ER) |
| CUNY GRADUATE CENTER, | |
| Defendant. | |

Ramos, D.J.:

Cornelius A. Badger, Jr., brings this action *pro se*.  He asserts claims against the City

University of New York (CUNY) arising from its adjustment to his student loans after he

withdrew from a course early in the semester, and its reporting of his student loan information to

credit reporting agencies.  Badger invokes as the basis for his claims Title VI of the Civil Rights

Act, 42 U.S.C. § 2000d *et seq*.; Title I of the Department of Education Organization Act of 1979;

the Higher Education Opportunity Act of 2008 ("HEOA"); the Dodd-Frank Wall Street Reform

and Consumer Protection Act of 2010; unspecified "provisions of the Consumer Finance

Protection Bureau"; and state law claims for libel.  Doc. 2 at 1.

By order dated December 13, 2022, the Court granted Badger's request to proceed *in*

*forma pauperis*, that is, without prepayment of fees.  Doc. 3.  For the reasons set forth below, the

Court grants Badger leave to file an amended complaint within 60 days of the date of this order.

**STANDARD OF REVIEW**

The Court must dismiss an *in forma pauperis* complaint, or any portion of the complaint,

that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks

monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B);

*see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998).  The Court must

also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" afforded to *pro se* litigants, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

## BACKGROUND

Badger alleges the following facts. In summer 2021, he registered for two classes with the CUNY Graduate Center, one in-person class and one hybrid class. Doc. 2 at 2. Because Badger's in-person class ended at 6:15 p.m., and his online course class started 6:30 p.m., he could not get home in time to log on to his online course. As a result, two weeks after classes

began, he dropped the online course. *Id.* The Graduate Center's Financial Aid Office then "canceled" some of Badger's previously approved and disbursed student loans, and it eventually "maliciously sent adjusted IOUs" to credit bureaus. *Id.* at 3. Badger does not identify the type of student loan program, the loan amount that he initially received, or any amount that he was asked to repay. He asserts that he has been barred from using the library and other Graduate Center services. *Id.* at 4.

Badger contends that the Title VI of 1964 Civil Rights Act protects "Americans who were/are members of racial minorities, of certain advanced ages, and who fit certain disability categories," and that CUNY, through its Financial Aid and Bursar's Offices, violated this Act in its "malicious pursuit" of him and "possibly . . . others." *Id.*

Badger further alleges that, in violation of the HEOA, CUNY "assaulted and harmed [his] speech and association rights," and his rights to "affordable college tuition and predictable costs." *Id.* He brings his HEOA claims under Title I, sections 104 ("protection of student speech and association rights"), and 116 ("state commitment to affordable college education); and Title IV, sections 423 (voluntary flexible agreement) and 432 (reports to consumer reporting agencies and institutions of higher education). He also invokes state libel law, in connection with the Graduate Center's reporting to consumer reporting agencies.

Badger names the CUNY Graduate Center as the defendant in this action, and seeks damages, and injunctive relief, including access to all Graduate Center resources that are available to students in good standing. *Id.* at 5.

## DISCUSSION

**A.    Claims under Title VI of 1964 Civil Rights Act**

Badger invokes Title VI of 1964 Civil Rights Act. *See Barnes v. Gorman*, 536 U.S. 181, 185 (2002) (holding that it is "beyond dispute that private individuals may sue" under Title VI to

address intentional discrimination); *Alexander v. Sandoval*, 532 U.S. 275, 279 (2001) ("[P]rivate

individuals may sue to enforce § 601 of Title VI and obtain both injunctive relief and

damages."). Title VI provides that "[n]o person in the United States shall, on the ground of race,

color, or national origin, be excluded from participation in, be denied the benefits of, or be

subjected to discrimination under any program or activity receiving Federal financial assistance."

42 U.S.C. § 2000d. To state a claim under Title VI, a plaintiff must allege that (1) the defendant

discriminated against him on the basis of race, color, or national origin; (2) the discrimination

was intentional; and (3) the discrimination was a substantial and motivating factor for the

defendant's actions. *See Tolbert v. Queens Coll.*, 242 F.3d 58, 69 (2d Cir. 2001); *Alexander*, 532

U.S. at 281 ("Title VI itself directly reach[es] only instances of intentional discrimination," not

disparate impact).[1]

Badger indirectly alleges that Title VI protects "Americans who were/are members of

racial minorities, of certain advanced ages, and who fit certain disability categories," and that

CUNY, through its Financial Aid and Bursar's Offices, violated this Act in its "malicious

pursuit" of him and "possibly . . . others." Doc. 2 at 4. He states that he will seek subpoenas for

"information on the treatment of racial minorities generally and of disabled people . . . ." *Id.*

First, contrary to Badger's assertions, Title VI does not govern discrimination based on

age or disability; by its plain terms, Title VI governs discrimination based on "race, color, or

national origin" in programs receiving federal financial assistance. 42 U.S.C. § 2000d. Next, as

a non-attorney, Badger can proceed *pro se* only on his own behalf; he cannot seek relief on

behalf of others. *See Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998) ("[B]ecause *pro se*

---

[1] Congress has abrogated the Eleventh Amendment immunity of states for violations of Title VI. 42
U.S.C. § 2000d-7(a)(1) ("A State shall not be immune under the Eleventh Amendment of the Constitution
of the United States from suit in Federal court for a violation of . . . Title VI of the Civil Rights Act of
1964 . . .").

means to appear for one's self, a person may not appear on another person's behalf in the other's cause.").

Moreover, Badger does not plead any facts about his own race, color, or national origin, or plead any facts giving rise to an inference that these characteristics played any role in the CUNY Graduate Center's handling of his student loans after he withdrew from a class.

In addition, the Court notes that federal regulations generally require institutions of higher education to recalculate the amount of student loan assistance to which a withdrawing student is entitled. *See, e.g.,* 34 C.F.R. § 668.22(j) ("When a recipient of Title IV grant or loan assistance withdraws from an institution during a payment period or period of enrollment in which the recipient began attendance, the institution must determine the amount of Title IV grant or loan assistance that the student earned as of the student's withdrawal date."). Although Badger does not allege any specifics about his student loan, and it is therefore unclear at this stage which federal regulations apply, CUNY's general obligation to recalculate student loans when a student withdraws may undercut his conclusory assertion that it did so "for the purposes of abuse, misguided punishment and predation." Doc. 2 at 4. In sum, the allegations of Badger's complaint are insufficient to state a claim that the CUNY Graduate Center discriminated against him because of his race, color, or national origin in violation of Title VI.[2]

**B.      Claims under the Higher Education Opportunity Act of 2008**

Badger invokes HEOA, which reauthorizes the amended Higher Education Act (HEA), 20 U.S.C. § 1070, *et seq*. He states that there "have been . . . breaches" of provisions of Title I,

---

[2] It is unclear from the caption of Badger's complaint whether he also intends to sue the CUNY Graduate Center's legal counsel, Lynette Phillips. The Court notes that Title VI claims cannot be asserted against an individual defendant because the individual is not the recipient of federal funding. *See Goonewardena v. New York*, 457 F. Supp. 2d 310, 328 (S.D.N.Y. Feb. 14, 2007).

sections 104 ("protection of student speech and association rights"),[3] and 116 ("state

commitment to affordable college education);[4] as well as Title IV, sections 423 (voluntary

flexible agreement),[5] and 432 (reports to consumer reporting agencies and institutions of higher

education).[6]

First, courts have repeatedly held that "the HEA does not permit a private right of action

for student borrowers," and the 2008 amendments do not appear to have altered this.  *Nehorai v.*

*U.S. Dep't of Educ. Direct Loan*, No. 08 Civ. 920 (SLT)(LB), 2008 WL 1767072, at *1

(E.D.N.Y. Apr. 14, 2008); *McCulloch v. PNC Bank, Inc.*, 298 F.3d 1217, 1221 (11th Cir. 2002)

("[T]he HEA does not expressly confer a private right of action, as the HEA only provides for a

suit brought by or against the Secretary of Education.").

Moreover, even if one or more provisions of this statute were enforceable by an

individual, rather than by the Secretary of Education, Badger's conclusory allegation that CUNY

"breach[ed]" these provisions is insufficient to state a claim.  Badger does not plead any facts

---

[3] Section 104 provides in relevant part that "no student attending an institution of higher education . . . should, on the basis of participation in protected speech or protected association, be excluded from participation in, be denied the benefits of, or be subjected to discrimination or official sanction under any education program, activity, or division of the institution directly or indirectly receiving financial assistance . . . ."  20 U.S.C. § 1011a.

[4] Section 116, titled "State commitment to affordable college education," requires a State to provide public institutions of higher education with funds "equal to or greater than the average amount provided . . . during the five most recent preceding academic years."  20 U.S.C. § 1015f.

[5] Pub. L. 110–315, Title IV, § 423 added paragraph 3, which describes, among other things, the portion of the interest on a loan which a student is entitled to have paid, on behalf of and for the account of the student, to the holder of the loan.  20 U.S.C. § 1078(a)(3).

[6] Pub. L. 110–315, Title IV, §432(a), titled "reports to consumer reporting agencies and institutions of higher education," provides that "the Secretary and each guaranty agency, eligible lender, and subsequent holder shall enter into an agreement with each consumer reporting agency to exchange information concerning student borrowers . . . ."  20 U.S.C. § 1080a(a).

about what CUNY did or failed to do that violated his rights under the HEA, as amended by the HEOA.

**C.      Claims under Title I of the Department of Education Organization Act of 1979**

Badger also brings his claims under Title I of the Department of Education Organization Act of 1979.  In that Act, Pub. L. No. 96–88, 93 Stat. 669 (1979) (codified at 20 U.S.C. §§ 3401–3510 (2000)), Congress split the Department of Health, Education, and Welfare into the Department of Health and Human Services and the Department of Education.  *McCormick v. Sch. Dist. of Mamaroneck*, 370 F.3d 275, 287 (2d Cir. 2004).  The basis for Badger's claim under this federal statute is unclear, and his allegations are insufficient to state a claim.

**D.      Claims for reporting to consumer reporting agencies**

Badger contends that the CUNY Graduate Center "has libeled the plaintiff in filing damaging and misleading claims to at least two credit bureaus regarding misplaced loan amounts and personal liabilities assessed against the plaintiff."  Doc. 2 at 1.  He further contends that such actions "related to the libel/defamation claim" constitute "violations of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, and of provisions of the Consumer Finance Protection Bureau."  *Id.*  Badger has not pointed to particular provisions of these federal statutes that CUNY has violated, and the Court is unaware of any provisions of the referenced statutes that provide a private right of action to an individual in connection with a defendant's furnishing of information to consumer reporting agencies.

Badger's complaint might be liberally construed as asserting a claim under the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq*, a federal statute that does govern the obligations of entities furnishing information to credit reporting agencies.  The FCRA imposes two duties on furnishers of information, which are codified at 15 U.S.C. §§ 1681s–2(a) and (b): Subsection (a) relates to the furnishers' duty to report accurate information to a consumer

reporting agency and their ongoing duty to correct inaccurate information; subsection (b)

governs the furnishers' duty once notice is received from a consumer reporting agency that there

is a dispute as to the completeness or accuracy of the information provided to that reporting

agency.

District courts in this Circuit have held that an individual consumer can bring suit only

for violations of Section 1681s–2(b).  *See Barberan v. Nationpoint*, 706 F. Supp. 2d 408, 427

(S.D.N.Y. 2010) ("No private right of action exists for violations of § 1681s–2(a) because this

provision 'shall be enforced exclusively' by government officials"); *see also Moore v. U.S. Dep't*

*of Educ.*, 457 F. App'x 10, 12 (2d Cir. 2011) ("While this court has not addressed the issue, a

number of our sister circuits as well as district courts in this circuit have similarly concluded that

15 U.S.C. § 1681s–2(a) affords no private right of action.").

Plaintiffs may sue for either willful or negligent noncompliance with § 1681s–2(b),

which requires furnishers of credit information to investigate and report alleged inaccuracies in

credit information, after receiving notice from a credit agency of a consumer dispute.  *Barberan*,

706 F. Supp. 2d at 427 n. 12.  However, "unless and until a furnisher of information receives

notice from a credit reporting agency, no private right of action exists under [§ ] 1681s–2(b)."

*Id.* (citing *Kane v. Guar. Residential Lending, Inc.*, No. 04 Civ. 4847 (ERK), 2005 WL 1153623,

at *4 (E.D.N.Y. May 16, 2005) ("Notice from an individual consumer, in the absence of notice

from a credit reporting agency, is insufficient to trigger the duties contained in Subsection (b)."));

*see also Nguyen v. Ridgewood Sav. Bank*, 66 F. Supp. 3d 299, 306 (E.D.N.Y. 2014) (holding that

plaintiff did not state a claim under Section 1681s–2(b) where he "failed to plausibly allege that

Ridgewood received notice of Plaintiff's dispute from a consumer reporting agency").

8

Here, Badger alleges that the CUNY Graduate Center furnished information about his student loans to consumer reporting agencies ("Defendant has libeled the plaintiff in filing damage and misleading claims to at least two credit bureaus").  Doc. 2 at 1.  He makes no allegation, however, that the Graduate Center failed to investigate after being notified by the consumer reporting agencies of an alleged inaccuracy.  Badger thus fails to state a claim under Section 1681s–2(b), which is the only provision that provides a private right of action for an individual to sue a furnisher of information.

Moreover, even if Badger amends his complaint to replead an FCRA claim, any remedy would be limited to injunctive relief only – not damages.  As a senior college, the CUNY Graduate Center is an arm of the State of New York.  *See Clissuras v. City Univ. of New York*, 359 F.3d 79, 81 (2d Cir. 2004) ("Is a CUNY senior college an 'arm of the state' and therefore immune from suit? . . . [W]e find that it is."); *Barry v. City Univ. of New York*, 700 F. Supp. 2d 447, 452 (S.D.N.Y. 2010).  The FCRA does not abrogate a State's Eleventh Amendment immunity to suit in federal court.  *See O'Diah v. New York City*, No. 02 Civ. 274 (DLC), 2002 WL 1941179, at *6 (S.D.N.Y. Aug. 21, 2002) ("Because Congress enacted the FCRA pursuant to its authority under the Commerce Clause, Congress is not empowered to abrogate a state's Eleventh Amendment immunity through the FCRA." (citing *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 59 (1996))); *Johnson v. Target Corp.*, No. 17 Civ. 7535 (JS)(AKT), 2019 WL 1227784, at *7 (E.D.N.Y. Feb. 12, 2019) ("[T]he FCRA does not abrogate New York's Eleventh Amendment immunity"), *report and recommendation adopted*, 2019 WL 1253467 (E.D.N.Y. Mar. 13, 2019).  The Eleventh Amendment therefore bars suit under the FCRA against the CUNY Graduate Center in federal court.

Under the doctrine of *Ex Parte Young*, 209 U.S. 123 (1908), an official-capacity suit will lie against an individual state official in federal court notwithstanding the Eleventh Amendment, but only for prospective injunctive relief.  Thus, if Badger wishes to plead a federal claim under Section 1681s–2(b) of the FCRA – on grounds that the CUNY Graduate Center, after being notified by a credit reporting agency that the information that it had provided was inaccurate, failed to reinvestigate – he can pursue it only as an official-capacity claim against an individual official and can seek only injunctive relief.[7]

### LEAVE TO AMEND

Badger proceeds in this matter without the benefit of an attorney.  District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile.  *See Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).  Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)).  The Court grants Badger 60 days' leave to amend his complaint to detail his claims if he can allege additional facts to state a valid claim under the standards set forth above.

In the "Statement of Claim" section of the amended complaint form, Badger must provide a short and plain statement of the relevant facts supporting each claim against each

---

[7] Badger brings a state law claim for libel in connection with furnishing information to credit reporting agencies.  Some courts have considered whether the FCRA preempts state law claims arising from information furnished to credit reporting agencies.  *See, e.g.*, *Pirouzian v. SLM Corp.*, 396 F. Supp. 2d 1124 (S.D. Cal. 2005).  At this stage, the Court need not consider Badger's supplemental state law claims or the issue of preemption.

defendant.  If Badger has an address for any named defendant, he must provide it.  Badger

should include all of the information in the amended complaint that he wants the Court to

consider in deciding whether the amended complaint states a claim for relief.  That information

should include:

     a)   the names and titles of all relevant people;

     b)   a description of all relevant events, including what each defendant did or failed to do, the approximate date and time of each event, and the general location where each event occurred;

     c)   a description of the injuries Plaintiff suffered; and

     d)   the relief Plaintiff seeks, such as money damages, injunctive relief, or declaratory relief.

Essentially, Badger's amended complaint should tell the Court:  who violated his

federally protected rights; how, when, and where such violations occurred; and why he is entitled

to relief.

Because Badger's amended complaint will completely replace, not supplement, the

original complaint, any facts or claims that he wants to include from the original complaint must

be repeated in the amended complaint.

**CONCLUSION**

Badger is granted leave to file an amended complaint that complies with the standards set

forth above.  Badger must submit the amended complaint to this Court's Pro Se Intake Unit

within **sixty days** of the date of this order (March 6, 2023), caption the document as an

"Amended Complaint," and label the document with docket number 22-CV-9784 (ER).  An

Amended Complaint form is attached to this order.  No summons will issue at this time.  If

Badger fails to comply within the time allowed, and he cannot show good cause to excuse such

failure, his federal claims will be dismissed for failure to state a claim upon which relief may be

granted, and the Court will decline, under 28 U.S.C. § 1367 (c)(3), to exercise supplemental

jurisdiction of his state law claims.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would

not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an

appeal.  *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant

demonstrates good faith when he seeks review of a nonfrivolous issue).

It is SO ORDERED.

Dated:   January 4, 2022
         New York, New York

_____
         Edgardo Ramos, U.S.D.J.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

_____
Write the full name of each plaintiff.

-against-

_____

_____

_____
Write the full name of each defendant. If you need more
space, please write "see attached" in the space above and
attach an additional sheet of paper with the full list of
names. The names listed above must be identical to those
contained in Section II.

_____CV_____
(Include case number if one has been
assigned)

**AMENDED**

**COMPLAINT**

Do you want a jury trial?
☐ Yes      ☐ No

---

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed
with the court should therefore *not* contain: an individual's full social security number or full
birth date; the full name of a person known to be a minor; or a complete financial account
number. A filing may include *only*: the last four digits of a social security number; the year of
an individual's birth; a minor's initials; and the last four digits of a financial account number.
See Federal Rule of Civil Procedure 5.2.

---

Rev. 2/10/17

## I.   BASIS FOR JURISDICTION

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation, and the amount in controversy is more than $75,000, is a diversity case. In a diversity case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal-court jurisdiction in your case?

☐   **Federal Question**

☐   **Diversity of Citizenship**

### A.   If you checked Federal Question

Which of your federal constitutional or federal statutory rights have been violated?

_____

_____

_____

_____

### B.   If you checked Diversity of Citizenship

#### 1.   Citizenship of the parties

Of what State is each party a citizen?

The plaintiff , _____ , is a citizen of the State of

(Plaintiff's name)

_____

(State in which the person resides and intends to remain.)

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____ .

If more than one plaintiff is named in the complaint, attach additional pages providing information for each additional plaintiff.

Page 2

Page 3

If the defendant is an individual:

The defendant, _____, is a citizen of the State of
(Defendant's name)

_____

or, if not lawfully admitted for permanent residence in the United States, a citizen or
subject of the foreign state of

_____.

If the defendant is a corporation:

The defendant, _____, is incorporated under the laws of

the State of _____

and has its principal place of business in the State of _____

or is incorporated under the laws of (foreign state) _____

and has its principal place of business in _____.

If more than one defendant is named in the complaint, attach additional pages providing
information for each additional defendant.

## II.  PARTIES

### A.  Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional
pages if needed.

_____

First Name                    Middle Initial              Last Name

_____

Street Address

_____

County, City                              State                    Zip Code

_____

Telephone Number                          Email Address (if available)

Page 3

## B.  Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. Attach additional pages if needed.

Defendant 1:

First Name                          Last Name

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City                         State                    Zip Code

Defendant 2:

First Name                          Last Name

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City                         State                    Zip Code

Defendant 3:

First Name                          Last Name

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City                         State                    Zip Code

Defendant 4: _____

    First Name                Last Name

_____

Current Job Title (or other identifying information)

_____

Current Work Address (or other address where defendant may be served)

_____

County, City            State           Zip Code

## III. STATEMENT OF CLAIM

Place(s) of occurrence: _____

Date(s) of occurrence: _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and what each defendant personally did or failed to do that harmed you. Attach additional pages if needed.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Page 5

---

---

---

---

---

---

---

---

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

---

---

---

---

**IV. RELIEF**

State briefly what money damages or other relief you want the court to order.

---

---

---

---

Page 6

## V.  PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| Dated | Plaintiff's Signature |

| | | |
|---|---|---|
| First Name | Middle Initial | Last Name |

Street Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

| | |
|---|---|
| Telephone Number | Email Address (if available) |

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☐ Yes    ☐ No

    If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.

# Notice For Pro Se Litigants



As a public health precaution, the New York Legal Assistance Group's Legal Clinic for Pro Se Litigants has temporarily suspended all in-person client meetings as of Tuesday, March 17, 2020.

Limited scope legal assistance will continue to be provided, but only by appointment and only over the phone. During this time, we cannot assist walk-in visitors to the clinic.

If you need the assistance of the clinic, please call **212-659-6190** and leave a message, including your telephone number, and someone will get back to you as soon as possible. If you do not leave a message with your telephone number, we cannot call you back.

Please be patient because our responses to your messages may be delayed while we transition to phone appointments.

